Number three, which is 23-10105, consolidated with 23-12058, Lopez-Martinez and Martinez-Lara v. the United States Attorney General. Mr. Alcina for the petitioners, Ms. Roberts for the respondents, Mr. Alcina, whenever you're ready. Thank you, sir. May it please the Court. I'm saddened to start with an issue that's unrelated to the issue and the case. I have to apologize to the Court and to the government for having failed to submit a supplemental brief in this case. After my clients abandoned me, I felt that I was justified to stop litigating the case. Upon further contemplation, I realized that was a mistake and I shouldn't have let my feelings interfere with my duties to this Court. I assure you that that's not going to happen again, and I tried to prepare as best I could to argue this case today. Great. Let's hear it. All right. So, regarding the question of what standard for review should the Court use for review in the BS application of the exceptional and extremely unusual hardship, petitioners would argue that it should be the novel standard. First, that is the standard that the Board uses to review the hardship determination from immigration judges. Since 2002, when they published their final rule, procedural reforms to improve case management, the EOIR explained that while the facts that an applicant claims make up exceptional and extremely unusual hardship are reviewed under the clearly erroneous standard, whether those facts amount to exceptional and extremely unusual hardship is reviewed by the Board, the novel. I guess the real question, though, is how we review the Board's decision, not how the Board reviews the IJ's decision. And I guess, I mean, the Supreme Court's recent decision, and the name has now escaped me. Wilkinson. Yeah. I mean, tells us a lot. It may not tell us quite everything, but it tells us a lot. It tells us that this extreme and exceptional unusual hardship is a mixed question, that it's primarily factual, and that review is deferential, right? So I think that probably takes it out of the de novo bucket. We may have a debate or a discussion about whether it's in the substantial evidence bucket or the arbitrary and capricious bucket, but I don't think it's in the de novo bucket. Well, I think that the issue of what standard of review apply was not before the Court in Wilkinson. And I would say that that part of the decision was dicta, because it wasn't really before the Board. But doesn't, I assume you were here before, and doesn't that take us back to our Court's precedent saying there's dicta, and there's dicta, and then there's Supreme Court dicta? I think, I suspect we'd be hard-pressed to say after Wilkinson, it's de novo review straight up. Well, this Court has a precedent that says that questions of law and fact are reviewed de novo. But you just said the Supreme Court has told us what to do. Yeah, I mean, the Supreme Court addressed this issue, right? I think you're probably, speaking only for myself, I think you're probably left to choose between substantial evidence and arbitrary and capricious. One or, I'm not sure if either of those is particularly better or worse for you, but I think it's likely to be one of those. I would say, in the facts of this case, either one would really not make a difference. I think it was Judge— So you're saying whether it's substantial evidence or arbitrary and capricious doesn't make a difference? That's what you want to be on the record for? No, I'm saying in the facts of this case, because what we're arguing here is that the Board did not follow its own precedent when they adjudicated this case. They did not apply the correct standard that they had announced in JJG to the facts of this case. The immigration judge made the decision, and shortly after she made the decision, the Board issued a precedent decision in matter of JJG. In matter of JJG, the Board said that when a claim is based on the health of a qualifying relative, the applicant has to establish that the qualifying relative has a serious medical condition and that if the qualifying relative is following the applicant to the country of origin, that adequate care is not reasonably available for that medical condition in the country of origin. Is that a factual question or a mixed question of law and fact, that determination? That determination is a mixed question. And what authority do you have for that? Say it again, I'm sorry? What authority do you have for that? I think that's what Wilkinson found out. Wilkinson said the hardship question was a mixed question of law and fact, but what about the availability of the treatment? Just as a, that seems more like a factual matter to me. The availability of care may be a factual question, but the application of that standard to the facts of the case is where the mixed question of law and fact is. Okay, so let's say you're correct. My question then is, what is the difference between a medically lower quality of care compared to reasonably available? Well, when you have lower quality medical care, it means that there is at least some quality of care available. But the issue in this case is that what the judge found and what the board affirmed was that the judge is finding that they did not establish that care was not available at all. And that is not what the standard for this case should be. It's whether care is reasonably available. Right, and that's what I'm trying to understand. And it might have been a matter of JJG where, believe it, the issue was whether or not the care, I think it was hypothyroidism, was available in Guatemala. And the record showed that it was available. The problem is that it was extremely expensive and all of the devices necessary weren't always going to be available at certain medical facilities. So then is that mean it's really not reasonably available or does it fall into a lower quality of care? Our argument is precisely that if something is either not readily available or too expensive or you have to travel too far out to obtain it, it's not reasonably available. And in the facts of this case, the evidence of contra conditions support that both the medical services and treatment and the special education services that the child requires are not reasonably available in Mexico. But the board never answered that question. They said that because they couldn't prove that they were not available, that they had not met the burden. Right, I understand. I understand that. I guess, so let me at least wrap up in this way, this part of it. What are the factors that we should consider? Because the scenario you provided, I think of distance, I think of cost, I think of maybe, you know, the quality of the facility, if it's considered to be run down or top-notch. What are the factors we should consider when deciding whether something care is reasonably available? I would say that the people can pay for it, number one. Number two, that they can actually find a place that it can be provided. So then for an individual, let's say a family that's wealthy, that's here, the cost, for example, I think in the JJG case, the general cost was $1,100. Some families might be able to provide that, but the facility is still 250 miles away. Another family doesn't even have a vehicle to get there, and they don't have the $1,100. So you have, the cost is the same for both families, the distance is the same for both families, but their economic ability to access the care is different. Is that what you're saying, we should look at the economic status of the family when deciding whether something is reasonably available? I think that would fall under the circumstances analysis that the adjudicator has to make for hardship. The age of the applicant, health, and also the circumstances, and that would fall under the circumstances. Say in Mexico, for example, $1,100 is two months' worth of minimum wages, and if the parents have to spend two months of minimum wages for a treatment that potentially may be available, it's not reasonably available to them because they couldn't eat for two  So you're saying we can't make a bright line, it still has to be an individual assessment based per family, and in some instances, their economic status does come into play. I would say that yes, by all means, economic situation is one of the things that should be considered when adjudicating whether treatment is reasonably available. Do you think that anytime someone has a prescription medication, they have a serious medical condition for purposes of these provisions? Well, whenever a person has a medical condition that has been diagnosed by a physician as requiring treatment or ongoing treatment, they have a serious medical condition, that is part of So a lot of kids have prescriptions for their acne. Do they have serious medical conditions that would prevent them from being removed to another country if acne treatment were less available there? Not if the acne is going to be something that's going to affect their studies or their well-being. So now you're saying if they have a prescription medication and it will affect their studies, right? It seems like you're recognizing that it takes more than just a prescription to constitute a serious medical condition. I think it depends on the facts of the case. In his case, the conditions are, it's a condition that, it's a mental disorder that has no known cure for which the child has been treated for years, and he does take prescription medication for that condition, and the prescription medication that he takes, we have to assume that it was the one that the doctor decided that it was best for his condition. There are other medications available, but the one that they prescribed for his condition happens not to be available in Mexico. But going to your question, certainly it would depend on the condition itself, not just the fact that they have a prescription. Okay, very well. Thank you very much for your opening argument. You've got four minutes remaining of rebuttal time. Ms. Roberts, let's hear from you. Good morning, your honors. May it please the court, Roberta Roberts on behalf of the United States Attorney General. The petitions for review should be denied, just as this court has recently denied similar cases with the same unavailing argument that attempts to cloak a factual determination as a legal standard, although it is merely a challenge to the weighing of the evidence, which the court lacks jurisdiction to review. Well, I guess I, maybe I'm wrong about this, but I thought Wilkinson told us that we got jurisdiction to review this, and then sort of specified the standard, not quite the standard, but told us a little bit about the standard under which we would review it. No? Yes, your honor. However, it's important to separate out what is a factual determination and what is a question of law here. In this mixed question of fact and law, that is the standard of EEUH, exceptional and extremely unusual hardship. So, to the extent that petitioners are arguing that the agency should have found certain specific facts, that is outside of the court's jurisdiction as that is a factual question. But to the extent that instead they just say the agency got the reasonable availability issue wrong and therefore got the EEUH determination wrong, we've got jurisdiction to determine that? It's a yes and. The reasonable available part is actually a factual determination. It's not a question of law. So, therefore, that part of the equation is unreviewable by this court. What the court can review is whether the agency applied the legal standard of EEUH in terms of looking at the decision of the agency, did the agency consider, you know, the facts and see if the facts met the standard that the hardship would be substantially different from or beyond that that would ordinarily occur, you know, to a qualifying relative that has a close. And what standard do you say we apply to that, right? Because Wilkinson doesn't quite tell us. Wilkinson says it's a mixed question, it's primarily factual, and therefore a review of the agency's determination is deferential. But that still leaves us with a couple of choices, substantial evidence, arbitrary and  What's your position? What's the government's position? The government's position is substantial evidence to be the standard. Tell me this. Is that because, with the help of one of my brilliant law clerks, I try to sort of work my way through the APA, we start with the APA, you know, we've got de novo, we've got arbitrary and capricious, and then, but then the INA specifies its own standard of review section, right, that the Supreme Court has at least interpreted to embody substantial evidence for factual determinations? Is that how we get there? Yes, Your Honor. That is the way to get there. Yes, indeed. Yes, indeed. And also, as Wilkinson stated, EEUH, you know, this determination, it's primarily a factual question, and substantial evidence standard of review is for, you know, factual determinations. And it does make sense because, as was mentioned, what goes into determining EEUH, as it is primarily factual, the agency, as the fact finder, is in the best position to find these facts, which is where the substantial evidence standard of review comes in, as it is highly deferential to this fact finding. Indeed, the main question with applying substantial evidence standard is whether a reasonable adjudicator would be compelled to make a contrary conclusion. And here, in this case, a reasonable adjudicator would not be compelled to find differently than the agency found here. Do you really think there's a difference, or can you articulate a difference that maybe has escaped a lot of other legal commentators and judges between substantial evidence and clear error? Is there a case where the difference between those would make a difference? Your Honor, I do not believe so. In fact, it seems as if substantial evidence is a type of clear error review in the immigration context. So substantial evidence and clear error are, as you've noted, very similar, so I can't necessarily articulate a better difference, except I would say that, for example, in U.S. Bank, for example, the Supreme Court case where they applied a more deferential standard of review that's closer to the substantial evidence standard, it was for clear error. That was outside of the immigration context. And here, in the immigration context, it kind of tweaks the APA. We're going with the INA, and the INA codifies substantial evidence review. So I think that could be what the difference is. But yes, it is essentially the same type of clear error review that is still very primarily factual, which is what we have here in this case. Is the point—oh, I'm sorry. Please go ahead. No, go ahead. Is the point, just to follow up on Judge Grant's question, the point that, substantive difference or no, substantial evidence is the thing we call review of primarily factual determinations in the court-to-court context? Yes, Your Honor. I think that's a great explanation. Okay. Just got a compliment. Well, after the last argument, I needed a compliment. You can be buffed up a little bit. I'm just wondering about Chevron, now that we're not bound by it. Does that impact how we're supposed to analyze the BIA's actions now? And does that undermine in any way the—I'm sure that's a question that's being asked not in your interest to say it undermines your argument, but I am interested in how it influences what you've said. Sure, Your Honor. Here, no. The lack of Chevron now does not affect the disposition of this case for a couple different reasons. One, the court actually does not need to reach the deference issue because this case falls on a factual determination here, whether the care was reasonably available. And the facts that were determined are unreviewable. As Wilkinson stated, citing to Patel as well, that those types of factual determinations, even in the mixed question of law and fact context, those are still unreviewable by this  So the court does not need to determine— support for the factual finding though, right? I mean, if the court found or the BIA said, you know, there's a medical facility 50 miles away, but it's actually 500 miles away, that would undermine that factual finding, and we could do something about that, right? Or you're saying no? I'm saying that Wilkinson specifically says that factual determinations remain unreviewable. So the factual determinations that the agency makes and then uses in its analysis of hardship or some other mixed question of law and fact, the factual determinations you're saying we need to take for granted because we don't have jurisdiction to review those. But then the kind of overall balance that was struck on the basis of those factual determinations, we can review. Is that your argument? The overall—could your Honor please elaborate on the overall balance? Well, once you're looking at the mixed question of law and fact, right? Was there—the agency makes factual determinations, A, B, and C, and then they say, based on A, B, and C, did this person have an exceptional hardship? We can review the did this person have an exceptional hardship based on A, B, and C, but we cannot review whether A, or B, or C is itself independently true. Is that what you're saying? Correct, Your Honor. Okay, thank you. Yes, Your Honor, that is it. You're saying Wilkinson stands for that proposition? Yes, Your Honor. Yes, indeed. Wilkinson says courts cannot review the facts underlying a hardship determination in the cancellation of removal context, and they should carefully distinguish between application of the exceptional and extremely unusual hardship legal standard, such as it is, and those unreviewable facts. Okay, so when the court or the BIA gets a factual finding that's just wrong, what's the vehicle for us to acknowledge and hopefully correct that?  Now, Wilkinson does mention that this standard is applied to undisputed or established facts. So, if there was an actual error, as you mentioned, if the agency said 50 miles, but indeed, actually, the historical fact objectively is 500 miles, then that is something that, again, this court could not do any fact finding, but in its determination, when applying to see if the overall legal standard of EEUH was appropriately applied to the facts, and it says, you know, undisputed or established facts, those would be disputed facts, so that would be a different situation. But undisputed facts, such as what we have here, there is no actual dispute that there is an alternative ADHD medication available. There is no actual allegation that the agency said facts that were false. Right, no, I understand. I just wanted to understand what the government's position was, or is, as to the parameters of our review. What is your response to my question regarding the difference, if any, between a medically lower quality of care compared to a reasonably available access to care? I think that, as Your Honor mentioned before, when speaking with petitioners' counsel about different factors that could go into that, those are factors, you know, cost and that type of thing. However, number one, that is a factual determination that is unreviewable by this and also, even if it were reviewable by this court. So you're saying to decide whether or not it's reasonably available, as opposed to just a medically lower quality of care, is a question of fact, that whatever the BIA decides, we just have to accept that too? Correct, Your Honor. In matter of JJG at page 811, it says, whether a qualifying relative suffers from a serious medical condition and whether adequate medical care for this condition is reasonably available in the country of removal are findings of fact that are made by an immigration judge and reviewed on appeal under a clearly erroneous standard. The applicant has the burden of establishing these facts. So that is a factual determination that the court is unable to review. And I understand it, you know, Wilkinson recently happened, up until now, EUH was, you know, generally just considered purely factual and we didn't get into this where we have to try to pull out what is reviewable versus not in this context. And it even seems that even petitioner's arguments as well, petitioner in their brief, in the Lara Martinez brief at page 19, quote, refers to the reasonable availability question as a legal standard and is arguing that, you know, the board applied the wrong legal standard in regards to reasonable availability. However, it is not a legal standard. It is a factual determination. So it's something that we would not review here. And even if the court were to review it, petitioners still did not meet their burden to show that adequate medical care would not be reasonably available. Because, for example, in their opening brief, when they mentioned that the board did not consider the cost of the medication, if they would be able to afford the medication, petitioners did not make that argument before the agency. So that argument was then exhausted. One question, just so I understand sort of the metastructure here. How does the reasonable availability judgment feed in to the EEUH determination? Because it seems like you're acknowledging that we have jurisdiction to determine the EEUH. But I guess, and maybe I'm just all mixed up, but I guess I've been thinking that reasonable availability somehow kind of like fed in to the EEUH, no? Yes, and. So reasonable availability is one of the factual determinations, one of the factors that is considered cumulatively that the EEUH standard is applied to. So reasonable availability is also on the same level as the factual question of the age of the qualifying relative, the health, you know, all this falls under the health, the circumstances. Right, exactly. So all of those facts are considered together cumulatively. And then the agency then applies the EEUH standard, which is looking at all of these facts together, do they create hardship that is so substantial that it is, different from or beyond that, that is usually experienced by a qualifying relative who has a close family member. Would you remind me, do we have a case that says that reasonable availability is a matter of fact, rather than itself a mixed question of law and fact? Actually, yeah, there are two unpublished decisions based on these, based on the same argument, actually. It doesn't say exactly what your honor is saying, but both of these cases do say that, well, similar to what your honor is saying. Matter of JJG clarified aspects of a cancellation applicant's evidentiary burden. So the reasonable availability, that goes to the petitioner's evidentiary burden. What types of evidence the petitioner could present to support a claim of EEUH based on health? Because JJG further clarifies how a petitioner could prove an EEUH claim that is based on health. And part of that is, okay, well, does the petitioner or does the qualifying relative have a serious medical condition, which just for the record, the agency did not reach that question here. The agency did not make a finding that the qualifying relative here has a serious medical condition. And then if there is a serious medical condition, is there adequate medical care that is reasonably available? And how can one show that the care is or is not reasonably available? That is what JJG talks about. And in two unpublished decisions, this court denied the petitions with the same types of facts, ADHD medication that was not the exact same medication available in Mexico. The agencies there in both of these cases found that the medical, that the petitioners did not prove that reasonable care was not, did not prove that adequate medical care was not reasonably available. And I can provide your honors with the sites of those cases, for example, but both of those cases also said that doing so what the government is arguing today and in the briefs was not applying a new standard. It was just simply clarifying the petitioner's evidentiary burden to be able to make a claim for EEUH based on the health of their qualifying relatives. And just so I'm clear, unpublished decisions, eh. But do they post-date Wilkinson? Yes, your honor. Yes, they are exactly same, pretty much same facts here. Both post-date Wilkinson from May and June of this year. Okay, thank you. Okay, very well. Thank you so much for your presentation. Mr. Asena, you've got four minutes. Thank you, your honor. May it please the court? Regarding the question of deference, clearly the court doesn't owe deference to the board's decision. Now it's required to use its independent judgment to review an agency's interpretation of a statute. Is that, can I ask you a question? Is that necessarily true in the immigration context where it seems like deference has been sort of part Chevron, part 1103A1, part sort of special justifications deferring to the executive in matters of foreign relations or whatever. It's not just straight Chevron in the immigration context, is it? I think the court can still rely on Skidmore deference. For immigration purposes and resort to the agency's adjudications for guidance. As the government explained or argued, JJG clarified the exceptional and extremely unusual standard. But, and this court has present decision in the Quan Yu finding that once the attorney general clarified the meaning of the statute in a precedent decision, that decision becomes controlling, controlling interpretation in all cases pending before the agency. So when JJG was issued as a precedent decision, it became controlling precedent for this case that was still pending before the board. And we would emphasize the fact that we are arguing in this case that the board did not apply the correct standard as enunciated in JJG because they, instead of adjudicating whether the respondents had presented, whether the care was reasonably available in Mexico, that what the judge determined was that they didn't establish that there was no care available in Mexico at all. I think that there are, in fairness, like two readings of the order or the BIA's decision. One, you're right. They do, the board does use the word available without the qualifier reasonably available once. But the board also quotes the reasonably available standard and cites JJG. And I mean, the balance of the order seems to me to be getting at reasonableness instead of just raw availability. Well, that's the core of our issue, and we thought that it didn't. When I was in college, and despite my young appearance, it may have been more than a few years ago, we couldn't purchase alcohol on Sundays because from Monday through Saturday, you could purchase alcohol if you had the funds, if you had transportation, if you had a good enough form of ID. Which is not necessarily to say legal. It would be reasonably available from Monday through Saturday. But on Sundays, regardless of whatever amount of money you had, you couldn't purchase alcohol because it was unavailable. And when the court, when the board, I'm sorry, uses the unavailability standard instead of the reasonably available standard, they're going against their own- But it sounds like your argument is about magic words, maybe, as opposed to what Judge Newsom just said, is that it's there. I mean, the standard is there. The overall analysis is there. It's just maybe the magic word wasn't used at the right point. Well, it's just when it involves reasonableness, I think it has to be reasonable. You can't take it- So it's not that the court didn't use the proper standard. It just didn't implement it or apply it in the correct way. I think it's the court used the improper standard because it required more hardship from the respondents than they would normally have to establish for a similar case. So even though some of the analysis appears to have incorporated the reasonably available standard, you're still saying that that was not enough. They certainly used the words. When they referred to JJG, divorce decision, they talked about the reasonably available standard. But when they affirmed the judge and found no clear error on the judge's decision, the judge did not use the reasonably available standard because it was not a precedent decision yet. This happened before JJG. So what we ask the BIA, re-send this case back to the judge so that she can adjudicate it using the current standard. And they could have done that, but they chose to say that her decision complied with the newer or clarified standard. And in our view, clearly it didn't. It was a different, more stricter standard. And for that reason, we pray the court would make a worse decision. Very well, thank you. And Mr. Alcina, thank you for coming back to us. Thank you. Thank you for your presentation. We're going to be in recess for five minutes. We'll be back at 1120. All rise. Thank you.